**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

IDENTITII LIMITED,

                Plaintiff,

   v.

JPMORGAN CHASE & CO., et al.,

                Defendants.

Civil Action No. 23-1095-GBW

---

John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; M. Elizabeth Day, Marc Belloli, Jerry D. Tice, II, Michael E. Flynn-O'Brien, BUNSOW DE MORY LLP, Redwood City, CA.

      *Counsel for Plaintiff*

Kelly E. Farnan, RICHARDS, LAYTON, & FINGER, P.A., Wilmington, DE; Rita J. Yoon, David C. Kiernan, JONES DAY, San Francisco, CA; Tharnan Gregory Lanier, JONES DAY, Palo Alto, CA; I. Sasha Mayergoyz, JONES DAY, Chicago, IL; H. Albert Liou, JONES DAY, Houston, TX.

      *Counsel for Defendants*

**MEMORANDUM OPINION**

May 29, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is the Motion of Defendants JPMorgan Chase & Co. ("Chase & Co.") and JPMorgan Chase Bank, N.A. ("JPMCBNA") (collectively, "Defendants") to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101 ("Defendants' Motion to Dismiss"). (D.I. 18). Plaintiff Identitii Limited ("Plaintiff") opposes. (D.I. 20). Defendants' Motion to Dismiss has been fully briefed (D.I. 19; D.I. 20; D.I. 21). For the reasons set forth below, Defendants' Motion to Dismiss (D.I. 18) is GRANTED.

## I.    BACKGROUND

On October 3, 2023, Plaintiff commenced the present action, alleging that Defendants infringed U.S. Patent No. 10,984,413 ("the '413 Patent"). (D.I. 1 ¶ 1). On December 15, 2023, Defendants moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that all claims of the '413 Patent are directed to patent ineligible subject matter under 35 U.S.C. § 101. (D.I. 18). Briefing was completed on February 16, 2024. (D.I. 19; D.I. 20; D.I. 21).

### A.    The '413 Patent

The '413 Patent "relates to  relates to financial transactions and in particular to a method and a system for processing a financial transaction." ('413 Patent at Abstract). There are 20 claims in the '413 Patent. (*Id.* at Claims). The First Amended Complaint alleges that Defendants "meet every limitation of one or more claims of the '413 patent, including, e.g., claim 15 of the '413 patent." (D.I. 15 ¶ 59). Claim 15 is an independent claim and recites:

> 15. A system for processing a financial transaction, the system comprising:

2

a first intermediary server in a centralised financial system, the first intermediary server being operably connected to a network and a first document store;

a token server operably connected to the network;

a messaging bus in the centralised financial system, the messaging bus being operably connected to the network; and

a blockchain operably connected to the network, the blockchain being a distributed ledger;

wherein the first intermediary server is configured to:

transmit one or more documents pertaining to the financial transaction, to the first document store;

generate an enriched data record from the one or more documents and add the enriched data record into the blockchain;

request generation of a token corresponding to the financial transaction to identify the one or more documents, to the token server, via the messaging bus; and

transmit the token to the first document store;

wherein the token server is configured to:

generate the token and add the token into the blockchain in association with the enriched data record; and

transmit the token to the first intermediary server, via the messaging bus.

('413 Patent at Claim 15).

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must set forth enough facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]t the motion-to-dismiss

3

stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79). "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678).

Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

## B.    Patent Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted). "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." *Id.* at 217 (cleaned up). "The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection." *Id.* (internal citation omitted). "The latter pose no

4

comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.*

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Alice*, 573 U.S. at 217. In other words, the inquiry is whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Id.* If "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). To avoid invalidity, the additional features "cannot simply be well-understood, routine, conventional activities previously known to the industry." *Id.* Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "Contesting patent eligibility under § 101 is an affirmative defense of invalidity, and the burden of proving invalidity falls squarely on . . . the movant." *Aon Re, Inc. v. Zesty.AI, Inc.*, 791 F. Supp. 3d 531, 537 (D. Del. 2025) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015); 35 U.S.C. § 282(a)).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016))); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility). The Federal Circuit "ha[s] repeatedly recognized, 'it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.'" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289-90 (Fed. Cir. 2024) (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)). "If patent eligibility is challenged in a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), we must apply the well-settled Rule 12(b)(6) standard which is consistently applied in every area of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018) ("*Aatrix I*"). "[P]atent eligibility [under § 101] can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (some alterations in original) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("*Aatrix II*")). This is,

6

however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix II*, 882 F.3d at 1128.

## III.    DISCUSSION

Defendants assert that all claims of the '413 Patent are directed to patent ineligible subject matter under § 101. Before the Court turns to the merits, the Court must address the threshold issue of representativeness.

### A.    Claim 15 is Representative

Defendants assert that "Claim 15 [of the '413 Patent] is representative for purposes of a § 101 analysis." (D.I. 19 at 18). In Defendants' view, the three independent claims of the '413 Patent recite "nearly identical limitations," but are drawn to a method (Claim 1), a system (Claim 15), and a server (Claim 16). Defendants also assert that "the dependent claims merely recite generic computer components used for their conventional purposes," and thus "do not alter the § 101 analysis." (D.I. 19 at 18).

Courts may treat a claim as representative if all the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). "Courts may [also] treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *see also Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1291-92 (Fed. Cir. 2024) (Claims can be treated as representative on a § 101 motion if the patentee does "not present a non-frivolous argument that the eligibility of the purported representative claim does not fairly represent all claims of the Asserted Patents."). Courts will find a claim

7

representative if "all of the challenged claims relate to the same abstract idea" and none of the other "claims add one or more inventive concepts that would result in patent eligibility." *Cronos Techs., LLC v. Expedia, Inc.*, C.A. No. 13-1538-LPS, 2015 WL 5234040, at \*2 (D. Del. Sept. 8, 2015). Courts have declined to rule on a § 101 motion to dismiss when the accused infringer failed to meet its burden to show that its choice of representative claim is proper. *Id.* at \*3-4.

In the present case, Defendants explain that the three independent claims of the '413 Patent contain nearly identical limitations, and that the limitations added by the dependent claims of the '413 Patent "merely recite generic computer components used for their conventional purposes." (D.I. 19 at 18). Defendants' explanation is sufficient "to make a prima facie showing that the group of claims are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd.*, 110 F.4th at 1290. Plaintiff does not challenge Defendants' assertion of representativeness, but also does not explicitly agree that Claim 15 of the '413 Patent is representative for purposes of a § 101 analysis. (*See generally* D.I. 20 (not making any arguments regarding representativeness)). If Plaintiff wanted to contest that Claim 15 of the '413 Patent was representative, it was required to "present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Mobile Acuity Ltd.*, 110 F.4th at 1290. Because Plaintiff failed to do so, the Court holds that Claim 15 of the '413 Patent is representative for purposes of a § 101 analysis.

**B.    The '413 Patent is Directed to Patent Ineligible Subject Matter**

    1.    At *Alice* Step One, the '413 Patent is Directed to the Abstract Idea of "Tracking a Transaction Using Attributes from the Transaction"

Defendants contend that Claim 15 of the '413 Patent covers the abstract and generic steps of "(1) storing financial documents in a database; (2) extracting data from those documents; (3) storing extracted data on a generic blockchain; (4) requesting an identifier for the financial

transaction; (5) generating the identifier; (6) storing the identifier with the extracted data on a generic blockchain; and (7) storing the identifier in a database." (D.I. 19 at 8-9). According to Defendants, "courts have already held each limitation in claim 15 to be an abstract idea" when run on generic computer technology. (*Id.* at 9; *see also id.* at 9-12 (citing cases where the patent-in-suit fails *Alice* step one for each limitation in claim 15)). In Defendants' view, because each of the claim limitations has been held to be directed to an abstract idea, claim 15 simply strings "together the claimed steps by adding one abstract idea to another," which is insufficient to direct the claims away from an abstract idea at *Alice* step one. (*Id.* at 12 (quoting *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021))).

Plaintiff disagrees. In Plaintiff's view, the '413 Patent "is directed to a new blockchain based, tokenized, computer network architecture for processing payments." (D.I. 20 at 9). Plaintiff contends that the '413 Patent represents a technological leap over the prior art, solving a problem specific to computerized financial transactions: accessing customers' secure data during a financial transaction. (*Id.* at 11-12). In Plaintiff's view, Defendants oversimplify the '413 Patent's claims, and further commit legal error by parsing the claim by limitation, when *Alice* Step One requires the claim to be analyzed as a whole. (*Id.* at 14).

At *Alice* step one, courts look "to whether the claim in question is directed to an improvement in computer technology as opposed to simply providing for the use of a computer to perform 'economic or other tasks for which a computer is used in its ordinary capacity.'" *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 737 (D. Del. 2018) (Bryson, J., sitting by designation) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)). "Where the claims at issue provide for an improvement in the operation of a computer, such as a new memory system, a new type of virus scan, or a new type of interface that makes a computer function more

accessible, the Federal Circuit has found the claims patent-eligible." *Id.* (collecting cases). However, when the claims are directed to "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool," the Federal Circuit has found such claims to be directed to patent ineligible subject matter. *Enfish*, 822 F.3d at 1336; *see also PersonalWeb*, 8 F.4th at 1315-18; *Berkheimer*, 881 F.3d at 1366-67; *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367-68 (Fed. Cir. 2015); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364-65 (Fed. Cir. 2020). Ultimately, the Court agrees with Defendants and finds that Claim 15 of the '413 Patent is directed to the abstract idea of processing a financial transaction on the blockchain, and not an improvement in the functioning of computerized financial transactions.

The '413 Patent "relates to financial transactions and in particular to a method and a system for processing a financial transaction." ('413 Patent at Abstract). "A financial transaction comprises at least two parties" and "includes a plurality of data associated with the transaction." ('413 Patent at 1:27-31). The data "may include payment metadata such as account numbers of" the two (or more) parties to the transaction, "Business Identifier Codes ('BIC') of the financial institutions corresponding to the" two (or more) parties to the transaction, "amount of currency to be transferred and type of currency, etc." (*Id.* at 1:33-36). It is difficult to keep track of, and ensure the integrity of, the data associated with the financial transaction during said financial transaction. (*Id.* at 1:39-44). Prior art systems used to settle financial transactions were essentially one-way transmissions of data associated with the financial transaction. (*Id.* at 1:44-48). "If it is subsequently discovered that there [were] deficiencies in the" data transmitted to effectuate the financial transaction, "time consuming checking and querying operations and correspondence often ensue[d] before the financial transaction c[ould] be effected." (*Id.* at 1:47-51). Additionally, prior art messaging systems used to effectuate financial transactions did not have the "larger

bandwidths needed for richer underlying data sets." (D.I. 15 ¶ 24 (citation omitted)). This required "transactions and transfers [to] go through numerous banks prior to reconciliation," which was "extremely labor intensive." (*Id.* ¶¶ 25 (citations omitted)).

The inventors of the '413 Patent sought to solve these shortcomings using blockchain technology, which "is a type of distributed ledger database that records and maintains a constantly growing list of transactions into sequential blocks." (D.I. 15 ¶ 29). According to the '413 Patent, once a financial transaction is to take place, an intermediary server uses documents to "generate an enriched data record . . . and add[s] the enriched data record into the blockchain." ('413 Patent at 12:40-42). A token is then generated, corresponding to the financial transaction, and stored in the blockchain in association with the enriched data record. (*Id.* at 13:09-21). The token is then transmitted back to the intermediary server. (*Id.* at Claim 15).

In determining whether claims are directed to patent ineligible subject matter under § 101, courts have found it helpful "to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. In asserting that the claims of the '413 Patent are directed to an abstract idea, Defendants compare Claim 15 of the '413 Patent to the claims at issue in *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021). (D.I. 25 at 1). In *PersonalWeb*, the claims at issue had three basic steps: "(1) receiving a request containing a content-based identifier for a data item, (2) comparing the content-based identifier to a plurality of values, and (3) granting or disallowing access to the data item based on the comparison . . . ." 8 F.4th at 1313. The Federal Circuit in *PersonalWeb* held that the claimed steps amounted to nothing more than an abstract idea, as each of the three claimed steps had been previously held to be abstract. *Id.* at 1316. Specifically, the Federal Circuit pointed to prior cases where (1) use of content-based identifiers had been held as abstract, (2) comparing content-based

identifiers against other values had been held as abstract, and (3) the controlling or retrieving data items based on the comparisons had been held as abstract. *Id.* at 1316-17. Although the Federal Circuit acknowledged that "the step-one inquiry looks to the claim[s'] character as a whole rather than evaluating each claim limitation in a vacuum," it nonetheless held that the claims at issue were "clearly focused on the combination of those abstract-idea processes," which is insufficient to direct the claims away from an abstract idea at *Alice* Step One. *Id.* at 1317.

Plaintiff contends that the claims of the '413 Patent are more similar to those found patent eligible in *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018). (D.I. 20 at 11). In *Ancora*, the Federal Circuit held that the claims were not directed to an abstract idea, but rather "to a solution to a computer-functionality problem: an improvement in computer functionality . . . ." 908 F.3d at 1349. The Federal Circuit held that the claimed computer architecture, storing a software license "in a particular, modifiable, non-volatile portion of the computer's BIOS," which was a departure from prior methods, improved the functionality of computers by making the installed software less susceptible to hacking. *Id.* at 1348-49.

Plaintiff also identifies *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) as an analogous case. (D.I. 20 at 12). In *Core Wireless*, the Federal Circuit held that the claims were "directed to an improved user interface for computing devices, not to the abstract idea of an index . . . ." 880 F.3d at 1363. The claimed method in *Core Wireless* required a summary window be launched to allow users of a website on small screens to quickly access features of a website. *Id.* at 1359-60. Because the claimed "limitations disclose[d] a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer," the Federal Circuit held that the

asserted claims "recite[d] a specific improvement over prior systems, resulting in an improved user interface for electronic devices." *Id.* at 1363.

The Court agrees with Defendants that the claims of the '413 Patent are more akin to those at issue in *PersonalWeb* rather than those at issue in *Ancora* or *Core Wireless*. Defendants include the following table in their brief, which summarizes how Claim 15 of the '413 Patent is directed to an abstract idea:

| 15. A system for processing a financial transaction, the system comprising: | Processing/settling a financial transaction. |
|---|---|
| a first intermediary server in a centralised financial system, the first intermediary server being operably connected to a network and a first document store; | Generic computer network architecture. |
| a token server operably connected to the network; | Generic server for generating an indicator |
| a messaging bus in the centralised financial system, the messaging bus being operably connected to the network; and | Sending information over a network |
| a blockchain operably connected to the network, the blockchain being a distributed ledger; | Generic blockchain technology |
| wherein the first intermediary server is configured to:<br>    transmit one or more documents pertaining to the financial transaction, to the first document store; | Transmit data and store data. |
| generate an enriched data record from the one or more documents and add the enriched data record into the blockchain; | Extract content and store. |
| request generation of a token corresponding to the financial transaction to identify the one or more documents, to the token server, via the messaging bus; and | Request generation of an identifier for the transaction |
| transmit the token to the first document store; | Transmit data. |
| wherein the token server is configured to:<br>    generate the token and | Generate an indicator for the transaction |
| add the token into the blockchain in association with the enriched data record; and | Store indicator with the extracted content. |

| transmit the token to the first intermediary server, via the messaging bus. | Transmit data. |
|---|---|

(D.I. 19 at 9-12 (citations omitted)). Indeed, several Federal Circuit cases confirm that each limitation in Claim 15 of the '413 Patent is directed to an abstract idea. *See, e.g., Alice*, 573 U.S. at 219 ("intermediated settlement is a fundamental economic practice long prevalent in our system of commerce." (cleaned up)); *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 933 (Fed. Cir. 2020) ("Carrying out fundamental economic practices involving simple information exchange" using "standard computers and networks to carry out those functions more speedily, [] efficiently, [and] reliably" is an abstract idea); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and storage is undisputedly well-known."); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("[T]he well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible."). Plaintiff does not challenge that, taken alone, each limitation of Claim 15 of the '413 Patent is directed to an abstract idea. (*See generally* D.I. 20 (not making any such assertion)). Rather, Plaintiff asserts that, when looking to Claim 15's "character as a whole," rather than its individual limitations, the claim is not directed to an abstract idea. (D.I. 20 at 14). However, it is nonetheless impermissible for the claims to be focused on the combination of abstract ideas. *PersonalWeb*, 8 F.4th at 1317. Claim 15, at its core, is directed to the combination of extracting data from financial documents, storing that data on the blockchain, generating an identifier associated with the data, and storing the identifier on the blockchain and in a database. ('413 Patent at Claim 15). That is insufficient to direct Claim 15 away from an abstract idea at *Alice* Step One under *PersonalWeb*.

14

Importantly, Plaintiff does not plead that Claim 15 of the '413 Patent is an improvement in blockchain technology. (*See* D.I. 15 (not making any such assertion)). Plaintiff instead pleads that the system recited by Claim 15 of the '413 Patent enables "banks to clear transactions more quickly and reliably with greater security because the use of blockchain allows for certainty of data that can be viewed at any point in time during the transaction and is verifiably linked to the underlying participants in the transaction." (D.I. 15 ¶ 32). However, the purported benefits that Plaintiff highlights merely stem from running an existing process (a financial transaction) on a new technology (the blockchain). (*Id.*). The Court finds this to be analogous to the improvements offered by practicing a manual process on a computer, which, in the absence of a technical improvement, the Federal Circuit has repeatedly held to be insufficient at *Alice* Step One to direct the claims away from an abstract idea. *Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043, at *6 (Fed. Cir. Aug. 21, 2023); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016) ("While the claimed system and method certainly purport to accelerate the process of analyzing audit log data, the speed increase comes from the capabilities of a general-purpose computer, rather than the patented method itself."); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

Plaintiff's arguments to the contrary are unavailing. Plaintiff attempts to discredit Defendants' *Alice* Step One analysis by citing Federal Circuit cases holding that the ordered combination of claim elements can bring a patent claim into the realm of patentability. (D.I. 20 at 14 (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *Attentive Mobile Inc. v. 317 Labs, Inc.*, C.A. No. 22-1163-CJB, 2023 WL 6215825, at

15

*8 (D. Del. Sept. 25, 2023))). However, the cited portions of *Bascom* and *Attentive Mobile* concerned *Alice* Step Two, and thus have little bearing on the Court's Step One analysis. *Bascom*, 827 F.3d at 1349 ("Here, in contrast, the claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea. We therefore defer our consideration of the specific claim limitations' narrowing effect for step two."); *Attentive Mobile*, 2023 WL 6215825, at *7 ("[T]he motions would still have been denied [at] step two."); *see also EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 644 (Fed. Cir. 2020) (faulting party for relying on cases concerning *Alice* Step Two for its *Alice* Step One arguments).

Thus, for the foregoing reasons, the Court finds that Claim 15 of the '413 Patent is directed to the abstract idea of processing a financial transaction on the blockchain. Therefore, the Court proceeds to the *Alice* Step Two analysis.

2.    At *Alice* Step Two, Claim 15 of the '413 Patent Lacks an Inventive Concept

As stated *supra* Section (III)(B)(1), the Court finds that Claim 15 of the '413 Patent is directed to the abstract idea of processing the financial transaction on the blockchain. Plaintiff asserts that Claim 15 of the '413 Patent has an inventive concept through the ordered combination of its claim elements. (D.I. 20 at 15-18). In Plaintiff's view, Claim 15 of the '413 Patent recites a novel architecture that is "more secure, reliable, and efficient" than prior art payment methods. (*Id.* at 15).

Defendants disagree. Defendants assert that the ordered combination of limitations present in Claim 15 of the '413 Patent does not amount to substantially more than the abstract idea of processing a financial transaction on the blockchain. (D.I. 19 at 17-18). In Defendants' view, because Claim 15 of the '413 Patent uses conventional technology to track attributes of a financial

transaction using an identifier and unspecified blockchain, Claim 15 does not contain an inventive concept sufficient to survive *Alice* Step Two.

The Court agrees with Defendants. Plaintiff does not assert that any of the components of its invention are unconventional. (*See* D.I. 20 (not making any such assertion)). Instead, Plaintiff asserts that the ordered combination of claim elements provides for "a new computer architecture for overcoming the problems of prior architectures for processing payments." (*Id.* at 16). However, the problems that Plaintiff identifies, and the '413 Patent's alleged solutions to them, amount to little more than applying the abstract idea. Plaintiff does not contend that it invented blockchain technology, nor does it contend to have invented tokenization. Also, processing a financial transaction by storing information on the blockchain, while generating and storing a token associated with that information, is the abstract idea identified *supra* Section (III)(B)(1). The abstract idea itself cannot provide an inventive concept at *Alice* Step Two. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) ("The abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance.").

Plaintiff cites to *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) for its contention that the ordered combination of claim elements can provide an inventive concept. (D.I. 20 at 16-17). In *Bascom*, the Federal Circuit was confronted with claims "directed to filtering content on the Internet." 827 F.3d at 1348. The Federal Circuit found that, despite "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which [were] inventive by itself," the claims as a whole were arranged to "carve out a specific location for the filtering system (a remote ISP server) and require the filtering system to give users the ability to customize filtering for their individual network accounts." *Bascom*, 827 F.3d at 1349, 1352. This nonconventional arrangement gave "the filtering

tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP server." *Bascom*, 827 F.3d at 1350. Claim 15 of the '413 Patent contains no such arrangement. Instead, Claim 15 of the '413 Patent simply arranges known conventional components in a conventional way, but in a new environment (the blockchain). The '413 Patent defines a "token" as "a pointer to an enriched data record of a plurality data required to process a financial transaction and wherein the plurality of data is rendered, formatted or passed through an algorithm in a predetermined manner." ('413 Patent at 28:66-29:03). Claim 15 of the '413 only requires that the token be associated "with the enriched data record . . . ." ('413 Patent at Claim 15). Plaintiff does not assert that it invented tokens. Similarly, the specification of the '413 Patent allows the invention to be practiced on "the 'Ripple' the framework, protocol and gateway-or more generally any blockchain based framework." ('413 Patent at 24:21-23). Plaintiff also does not contend that it invented blockchain technology. Nor does Plaintiff assert that applying tokenization improves the underlying blockchain technology. (*See* D.I. 15 (not making any such assertion)). Thus, *Bascom* is distinguishable.

Plaintiff also relies on *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) in asserting that Claim 15 of the '413 Patent contains an inventive concept. In *Amdocs*, the Federal Circuit held eligible at *Alice* Step Two patent claims relating to managing data over large networks when they contained "specific enhancing limitations that necessarily incorporated the invention's distributed architecture." *Amdocs*, 841 F.3d at 1301. The court noted that the patents brought an "unconventional technological solution (enhancing data in a distributed fashion) to a technological problem." *Id.* at 1300. By contrast, the solution in the '413 Patent is not directed to a technological problem. As discussed *supra*, the '413 Patent uses conventional

18

tokens on a conventional blockchain in a conventional manner. Thus, *Amdocs* is also distinguishable.

The Court finds instructive the Federal Circuit's decision in *Rideshare Displays, Inc. Squires*, No. 2023-2033, 2025 WL 2751580 (Fed. Cir. Sept. 29, 2025). In *Rideshare*, the claims were "directed to improving a user's experience in using a ridesharing app and identifying a driver." 2025 WL 2751580, at *6. The Federal Circuit found no inventive concept where said claims were not "directed to an improvement to the mobile device environment itself," but were merely a "technological improvement [that] more easily enable[d] and facilitate[d] human interactions," and did "not fundamentally alter or improve the way the technology itself functions." *Id.* In the present case, Plaintiff does not assert that the '413 Patent improves blockchain technology, but rather that the use of blockchain technology is helpful in facilitating financial transactions. (*See* D.I. 15). Thus, the Court finds *Rideshare* to be analogous to the present circumstance.

Importantly, the ordered combination of claim elements also cannot provide an inventive concept because the specification specifically disclaims any unconventional ordering of steps. ('413 Patent at 38:46-51 ("For the purpose of this specification, where method steps are described in sequence, the sequence does not necessarily mean that the steps are to be carried out in chronological order in that sequence, unless there is no other logical manner of interpreting the sequence.")). Plaintiff asserts that an "ordered combination" does not refer exclusively to a *temporal* order, but rather to the arrangement of the claim elements. (D.I. 98 at 1). However, the '413 Patent disclaims any such unconventional arrangement. ('413 Patent at 38:46-51). Contrary to Plaintiff's suggestion, an "ordered combination" of claim elements sufficient to provide an inventive concept cannot be "any combination." *Tech. in Ariscale, LLC v. Razer USA Ltd.*, No.

19

2024-1657, 2026 WL 34497, at *3 (Fed. Cir. Jan. 6, 2026) (finding no inventive concept where "the advantages associated with the patented invention are not tied to the particular order of steps dictated in" the claims.). Thus, the ordered combination of claim elements fails to provide an inventive concept.

\*        \*        \*

Ultimately, Claim 15 of the '413 Patent strings together several abstract ideas and is directed to the abstract idea of processing a financial transaction on the blockchain. Although Plaintiff asserts that the ordered combination of claim elements provides an inventive concept, any such inventive concept is merely practicing the abstract idea. Moreover, the '413 Patent specifically disclaims any unconventional ordered combination. Thus, the Court finds that the '413 Patent is directed to patent ineligible subject matter. Therefore, Defendants' Motion to Dismiss (D.I. 18) is GRANTED.

Because the Court found that the '413 Patent is directed to patent ineligible subject matter, the Court finds that any amendment to the First Amended Complaint (D.I. 15) would be futile, and the Court does not reach Defendants' other arguments for dismissal. Accordingly, the Court will dismiss the First Amended Complaint (D.I. 15) with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (D.I. 18) is GRANTED. An appropriate Order will follow.

20